**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ENJOY THE CITY NORTH, INC. and**
**ENJOY THE CITY, INC.,**

               **Plaintiffs,**

     **vs.**                             **3:08-CV-718**

**JEFF STRANGER and JEFF STRANGER**
**d/b/a J.L.S. ENTERPRISES, and Z BEST**
**DINING & ENTERTAINMENT,**

               **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.**    **INTRODUCTION**

     Plaintiffs Enjoy the City, Inc. (ETC) and Enjoy the City North, Inc. (ETC North) bring

this action to recover for trademark infringement and violations of New York State unfair

competition laws and to enforce non-compete agreements signed by Defendants Jeff

Stranger and J.L.S. Enterprises.  Presently before the Court are Plaintiffs' motion for a

preliminary injunction and Defendants' cross-motion to change venue.

**II.**    **BACKGROUND**

    **a.**    <u>**Factual**</u>

ETC is a New York corporation with its principal place of business in

Birmingham, Alabama.  It is the owner of the registered trademark "Enjoy the City" and the accompanying logos.  ETC has used the trademark "Enjoy the City" and accompanying logos since October 2001 and has used the trademark in commerce since March 2002.

ETC North is a New York corporation with its principle place of business in New York but which operates its business in several states.  ETC North creates, manufactures and distributes a merchant discount coupon book (the ETC Book) under the ETC mark which it uses by permission of ETC.   ETC North obtains the merchants for the book, creates the book, and signs distributors to distribute the book to non-profit groups who resell the books as fundraisers for their groups.  Distributors pay ETC North for the books and keep a percentage of the profit when the books are sold by the non-profit groups.[1] ETC North's books are designed in New York and India, and are printed in New York

In February 2006, a representative of ETC North met Defendant Stranger at a fund raising industry trade show in Atlantic City, New Jersey.  Stranger, a California resident, began negotiating the terms of a Distribution Agreement that would allow him and his business, J.L.S. Enterprises, to be the exclusive distributor of the ETC North book in the San Diego, Stockton, and Sacramento, California territories for a one year period. Stranger continued the negotiations from his office in California, and signed the initial Distribution Agreement in his office on April 5, 2006.[2]

---

[1]ETC North requires their distributors to allow local groups to keep 40% of the profit of the books they sell.

[2]Stranger faxed and mailed the executed agreement back to ETC North in New York.

Stranger contends that there were problems with the ETC North books supplied under the Distribution Agreement because certain merchants in San Diego advised him that they had not authorized the coupons used in the ETC North book.  Stranger asserts that because of these problems, he was forced to close down his San Diego market and to make "manual adjustments" to the books offered in Sacramento and Stockton.  When Stranger requested a refund of money he paid to ETC North for the books, he was instead offered an exclusive distributorship in Fresno, California.  He agreed and, in October 2006, executed an exclusive Distribution Agreement covering Fresno.[3]  Subsequently, Stranger executed similar Distribution Agreements for Sacramento (April 3, 2007) and Stockton, California (June 11, 2007).[4]

All of the Distribution Agreements contain identical provisions prohibiting Stranger from engaging in any activity that directly competes with the ETC Book while operating under the distributorship and for one year after its termination in any area where ETC North distributes the ETC Book.   The Distribution Agreements also contain identical provisions selecting New York law to be applied to any dispute arising under the agreements, and selecting Broome County, New York as the exclusive venue to litigate any such disputes.

 Plaintiffs assert that Stranger and J.L.S. Enterprises breached the Fresno Dsitribution Agreement by failing to pay for copies of the Fresno ETC Book.  Based upon

---

[3]Stranger contends that he negotiated and executed the document from his office and did not travel to New York at any time.

[4]Like the previous  agreements, Stranger negotiated and executed the agreements from his office in California.

3

this purported breach, and other alleged activity by Stranger that Plaintiffs contend was in

violation of the Distribution Agreement, ETC North sent a letter to Stranger giving him 30

days to cure the breaches or advising that the distributorship would terminate.  Stranger

did not respond.  Plaintiffs assert:

> Subsequently, ETC North learned that Stranger had set up a competing business, Z Best, and was representing that Z Best was the "West Coast Division of ETC" in order to promote Z Best's merchant discount coupon book. Z Best's book is virtually identical to the ETC Book. Thereafter, ETC North began receiving complaints about Stranger's and Z Best's conduct. ETC North was also threatened with a lawsuit as a result of Stranger's and Z Best's representations. ETC North also learned that Stranger and Z Best were using the ETC name, and the ETC Mark in commerce to promote their own product.

Pltf. Mem L. p. 4.  Plaintiffs' attempts to curtail Stranger's conduct were unsuccessful. See

Compl. ¶¶ 61-65.[5]

**b.    Legal**

_____

[5]The Complaint alleges:

61.    On or about April 16, 2008, attorneys for ETC North sent Stranger a cease and desist letter. Attached hereto as Exhibit "J"is a copy of that letter.

62.    The letter indicated Stranger was in violation of his non-compete clause of the Agreements and demanded that he cease and desist violating the non-compete clause.

63.    The letter also indicated that Stranger was using the Enjoy the City trademark and logo without permission and demanded that he cease and desist use of the trademark and logo and that he recall all documents containing the Enjoy the City trademark and logo.

64.    In or about May 2008, ETC North received a copy of a lawsuit that purported to name Stranger and Z Best as agents of ETC North. Since that time, ETC North has learned that, upon information and belief, Stranger and Z Best have been using ETC's name, and falsely representing an affiliation with ETC in order to sell their competing books.

65.    In or about June 2008, ETC North received an e-mail from a potential distributor indicating that Stranger, Z Best and agents, employees, and/or representatives of Stranger and Z Best have been representing that Z Best is the "West Coast Division of Enjoy the City" without permission to use the Enjoy the City mark or logo and with intent to confuse the general public, consumers of the book, and fundraising groups about their product.

Plaintiffs commenced this action on July 3, 2008 asserting claims of trademark infringement under 15 U.S.C. § 1114(1), false designation of origin under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c),  trademark dilution under New York Gen. Bus. Law § 360-l, trademark infringement under New York Gen. Bus. Law § 360-k, trademark infringement and unfair competition under state common law, deceptive acts and practices under New York Gen. Bus. Law §§ 349-350, common law "palming off," breach of a distributorship contract, breach of a non-compete contract, and common law misappropriation of proprietary information. See Compl. [dkt. # 1].  Plaintiffs also filed a contemporaneous *ex parte* application for an Order to Show Cause ("OSC") requesting: (a) that Defendants be ordered to show cause why a preliminary injunction should not issue restraining them from 1) infringing Plaintiffs' trademarks, 2) unlawfully competing with Plaintiffs, 3) making false statements regarding Plaintiffs' and Defendants' affiliation, 4) competing with Plaintiffs in violation of the non-compete agreement, and 5) requiring Defendants to return all proprietary information of Plaintiffs and destroy all infringing documents; and (b) a Temporary Restraining Order ("TRO") restraining Defendants from 1) using any documents of any form containing the words "Enjoy the City" or the Enjoy the City logos, 2) representing that Defendants are affiliated with or sponsored by Enjoy the City in any way, shape, or form, and/or 3) creating, maintaining, or assisting with the creation of any competing business within 100 miles of any area where Enjoy the City operates.  Dkt. # 5.

The Court initially denied the requested TRO, but granted the OSC requiring Defendants to show cause on July 24, 2008 why an order should not be entered pursuant

to Fed. R. Civ. P. 65 enjoining Defendants from 1) infringing Plaintiffs' trademarks; 2) unlawfully competing with Plaintiffs; 3) making false statements regarding Plaintiffs' and Defendants' affiliation; 4) competing with Plaintiffs in violation of the non-compete agreement; and 5) requiring Defendants to return all proprietary information of Plaintiffs and destroy all infringing documents.  See 7/7/08 Order, dkt. # 6.

Plaintiffs had some difficulty serving the Order to Show Cause upon Defendants in compliance with the July 7, 2008 Order, but did obtain substitute service upon Defendants. See dkt. # 7, dkt. # 9.   On July 22, 2008, the Court received a letter from David L. Emerzian, Esq., a California attorney, indicating: (1) that he represents the Defendants; (2) that he received the show cause papers (albeit after the time set by the Court in the show cause order); (3) that Defendants were attempting to obtain local counsel, and (4) that he was requesting  an adjournment on the pending show cause motion.  See Emerzian Letter, dkt. # 10.  Despite the fact that neither the Defendants nor an attorney on their behalf made an official appearance in this matter,[6] the Court conducted a telephone conference with Mr. Emerzian and Plaintiffs's counsel on July 23, 2008. See Minute Entry, dkt. # 11.  During that telephone conference, the attorneys advised that a stipulation would be forthcoming which would foreclose the need for a preliminary injunction hearing.  Based upon the attorneys' representations and consent during the telephone conference, the Court marked off the scheduled show cause hearing.

---

[6]Attorney Emerzian is not admitted in this District and therefore cannot officially appear on behalf of Defendants.

On July 28, 2008, Plaintiffs filed an application asking that the OSC be restored to the calender, and provided information that Defendants were continuing to hold themselves out as affiliated with Plaintiffs, were engaging in competition in certain markets in violation of the restrictive covenants signed by Defendants Stranger and J.L.S. Enterprises, and failed to execute a stipulation. On July 29th, the Court contacted Attorney Emerzian's office by telephone and left a message asking Emerzian to contact Chambers. A return telephone call was not received. On August 5, 2008, Chambers staff contacted Attorney Emerzian and left a message indicating that, absent receipt of a stipulation, the matter would be restored to the calendar. No contact has been made by Attorney Emerzian, by any attorney on behalf of Defendants, or by the Defendants.

On August 7, 2008, based on the then-uncontested allegations contained in Plaintiffs' show cause papers and in the July 28, 2008 application to restore the matter to the calendar, the Court restored the OSC to the calendar (with an August 21 return date) and issued a TRO. See 8/7/08 Dec. & Ord., dkt. # 13.[7]

Defendants have now appeared through counsel. In their opposition papers, Defendants: (1) contend, *inter alia*, that California law applies to the contract claims asserted and that, under California law, the restrictive covenants in issue cannot be enforced; (2) agree not to use Plaintiffs' trademark or logo and consent to an Order prohibiting them from engaging in this activity, (3) argue that a preliminary injunction

---

[7]The August 7 Decision and Order required plaintiffs to post a bond in the amount of $400,000 as security in accordance with Fed. R. Civ. P. 65(c), and provided that "until August 21, 2008, Defendants are restrained from: 1) using any documents of any form containing the words "Enjoy the City" or the Enjoy the City logos, 2) representing that Defendants are affiliated with or sponsored by Enjoy the City in any way, shape, or form,  and 3) creating, maintaining, or assisting with the creation of any competing business within 100 miles of any area where Enjoy the City operates."

should not issue on any other claim; and (4) cross-move to change venue to the Eastern District of California pursuant to 28 U.S.C. § 1404(a).  Def. Response, dkt. # 14.

Plaintiffs have replied, contending that New York Law applies and that a preliminary injunction should issue on the asserted claims. Plaintiffs note, however, that they have been unable to post the bond required by the TRO and assert that Defendant Stranger has already distributed competing books in Fresno, California thereby defeating the effect of the TRO in that market. Stanton Aff. ¶¶ 13-16.  Accordingly, Plaintiffs request that the Court "allow the Temporary Restraining Order in place to dissolve at this time." Id. ¶ 17.  Plaintiffs oppose the motion to change venue citing the forum selection clauses of the pertinent distribution agreements.

## III.    DISCUSSION

### a.      Trademark Infringement

Plaintiffs' application for a preliminary injunction is based in part on the allegations that Defendants are holding themselves out as affiliated with the Plaintiffs' businesses and using the "Enjoy the City" trademark and logo.  Defendants agree "not to use the [Plaintiffs'] trademark or logo and [have] consented to an Order prohibiting [them] from engaging in this activity."  Def. Mem. L. p. 21.   Based upon this consent, a limited preliminary injunction will issue relative to these trademark claims.

### b.      Cross-Motion to Transfer Venue

The Court next addresses Defendants' cross-motion to transfer venue to the Eastern District of California pursuant to 28 U.S.C. § 1404(a).

The parties have agreed through the Distribution Agreements that "[t]he venue for

8

any action hereunder shall be Broome County, New York.  Distributor hereby consents to

such jurisdictions as the exclusive locations for any action." See Distributorship

Agreements § 13, Ex. D, E, & F to Complaint.[8]   The clauses arguably apply to all claims

asserted in this action.  See Gessler v. Sobieski Destylarnia S.A. , 2007 WL 1295671, at *

4 (S.D.N.Y. May 3, 2007)(finding a forum selection clause applied to all claims and all

parties because "[a]ny determination with respect to Plaintiff's claims for trademark

infringement, dilution, unfair competition or unjust enrichment will require consideration of

the [underlying] Agreements."); YWCA of the United States v. HMC Entertainment, 1992

WL 279361, at *4 (S.D.N.Y. Sept. 23, 1992) ("Even though the contract has expired,

plaintiff's claims for a declaratory judgment with respect to defendant's potential unfair

competition, trademark infringement, misappropriation and implied contract claims, involve

rights arising out of the contract."), but see Phillips v. Audio Active Ltd., 494 F.3d 378,

389-90 (2d Cir. 2007)(narrowly construing the phrase "arising out of" in a forum selection

clause as not "encompassing all claims that have some possible relationship with the

contract," and concluding that a party's copyright claim did not "arise out of" the musical

recording contract containing the forum selection clause).

        Nonetheless, the existence of the forum selection clauses, even if covering all of

the disputes in this action, does not prevent the Court from considering whether to

transfer the case pursuant to § 1404(a).  Stewart Organization, Inc. v. Ricoh Corporation,

487 U.S. 22, 29 (1988).   "[A]lthough a forum selection clause should be 'a significant

factor' in the district court's decision on whether to transfer venue in a diversity action, it

_____

        [8]Each Distributorship Agreement is identical in this respect.

9

alone is not dispositive, and Section 1404(a) require[s] courts to take into account other

important considerations." Sherman Street Assocs. LLC v. JTH Tax, Inc., 2004 WL

2377227, at *2 (D. Conn. Sept. 30, 2004)(quoting Stewart, 487 U.S. at 29).

> "Section 1404(a) directs a district court to take account of factors other than
> those that bear solely on the parties' private ordering of their affairs. The
> district court must also weigh in the balance the convenience of the
> witnesses and those public-interest factors of systemic integrity and fairness
> that, in addition to private concerns, come under the heading of 'the interest
> of justice.'" [Stewart, 487 U.S.  at 30]; see also Red Bull Associates v. Best
> Western International, Inc., 862 F.2d 963, 967 (2d Cir. 1988)("Section
> 1404(a) reposes considerable discretion in the district court to adjudicate
> motions for transfer according to an 'individualized, case-by-case
> consideration of convenience and fairness.'")(quoting Stewart, 487 U.S. at
> 29). Therefore, under the discretion afforded by § 1404(a), a district court
> may transfer an action based on the presence of a forum-selection clause,
> or despite the presence of a forum-selection clause. See Heller Financial,
> Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989)("Despite
> the existence of a valid forum-selection clause, courts may still transfer a
> case under § 1404(a). . . .  This is because only one of § 1404(a)'s
> factors--convenience of the parties--is within the parties' power to waive.").

Id.

> Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a
> district court may transfer any civil action to any other district or division
> where it might have been brought.

28 U.S.C. § 1404(a).   "When ruling on a motion to transfer, a district court first considers

whether the action might have been brought in the district to which the movant seeks to

transfer it, and next considers whether the transfer promotes convenience and justice."

McKinley v. Continental Airlines, Inc., 2007 WL 2462671,  at  *1 (E.D.N.Y. Aug. 29,

2007)(citation and quotation marks omitted); see Sherman Street Assocs. LLC v. JTH Tax,

Inc., 2004 WL 2377227, at *2 (D. Conn. Sept. 30, 2004)("The undisputed goal of Section

1404(a) 'is to prevent waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'")(quoting <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964)).

There is no dispute that the action could have been brought in the Eastern District of California. <u>See</u> 28 U .S.C. § 1391(b).[9]

> In considering whether transfer would promote convenience and justice, district courts have "broad discretion," and consider transfer requests "on a case-by-case basis." <u>D.H. Blair & Co., Inc. v. Gottdiener</u>, 462 F.3d 95, 106 (2d Cir. 2006). Factors to be considered include the following: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. <u>See</u> <u>In re Hanger Orthopedic Group, Inc. Securities Litigation</u>, 418 F. Supp.2d 164 (E.D.N.Y.2006); <u>Dealtime.com v. McNulty</u>, 123 F. Supp.2d 750 (S.D.N.Y. 2000). The movant has the burden of making a "clear-cut showing" that transfer is warranted. <u>In re Hanger</u>, 418 F. Supp.2d at 176.

<u>McKinley</u>, 2007 WL 2462671, at *2.

Factors 2 (the convenience of the parties) and 6 (the relative means of the parties) weigh against transfer. By agreeing to litigate their disputes in Broome County, New York, the parties have indicated that the forum is convenient to them and that, given their relative means, accessible to both.

Factor 7, the forum's familiarity with the governing law, is neutral. The California federal court is as competent as this Court to apply the federal trademark laws, to make a

---

[9]Indeed, absent the forum selection clauses, venue would not appear to be proper in this District. <u>See</u> 28 U .S.C. § 1391(b).

proper determination as which state's law applies to the non-federal claims, and to apply

that law to Plaintiffs' non-federal claims. See Estee Lauder Companies Inc. v. Batra, 430

F. Supp.2d 158, 172-173 (S.D.N.Y. 2006)(analyzing the application of Cal. Bus. & Prof.

Code § 16600 to a contract claim);[10] SG Cowen Securities Corp. v. Messih, 2000 WL

633434, at *3 (S.D.N.Y. May 17, 2000)(analyzing the application of  Cal. Bus. & Prof.

Code § 16600), aff'd, 224 F.3d 79 (2d Cir. 2000); Person v. Google, Inc., 2007 WL

832941, at * 6 (N. D. Cal. March 16, 2007)(analyzing claims under N.Y. Gen. Bus. Law §§

349, 349-c, 350, 350-e).

Factors 1, 3, 4, and 5 weigh strongly in favor of transfer.  The allegations in the

Complaint and in the moving papers concern Defendants' action in California to develop

and market its own coupon book.  These allegations concern the nature and content of

the representation purportedly made by Defendants in attempting to solicit California

businesses to participate in Defendants' coupon book, and representations made to non-

profit organizations in California to solicit them to sell the book.  The locus of operative

facts and, a fortiori, the relevant witnesses and other sources of relevant proof, are

located in California.  Indeed, in support of their application to restore the OSC to the

calendar, Plaintiffs have offered the affidavits of two individuals who operate businesses

in Fresno, California attesting to conduct and statements purportedly made by Defendant

---

[10]A central issue in Plaintiffs' demand for a preliminary injunction, and in the underlying action, concerns whether Defendant Stranger and his business, J.L.S. Enterprises, are operating in violation of restrictive covenants contained in Distributorship Agreements.  Defendants contend, inter alia, that California law applies to the contract claims and that, when applying Section 16600 of the California Business and Professions Code, the restrictive covenants cannot be enforced. Section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600.

Stranger to businesses and non-profit organizations in California. <u>See</u>  Douglass Aff., dkt. # 12-4; Giannopoulos Aff., dkt. # 12-6.  The convenience of witnesses and the availability of process to compel the attendance of unwilling witnesses from these businesses and non-profit organizations for both the preliminary injunction determination and the ultimate resolution of the claims overwhelmingly supports venue in California. <u>See</u> <u>Maryland Casualty Co. v. Realty Advisory Board on Labor Relations</u>, 107 F.3d 979, 984 (2d Cir. 1997)(A factual hearing is generally required on an application for a preliminary injunction when material issues are in dispute.).

By the same reasoning, factor 9, trial efficiency and the interest of justice, weighs in favor of transfer. Although California may be inconvenient to Plaintiffs, trial efficiency will be served by venue in California where the nonparty witnesses and other sources of proof are located.  Further, to the extent that Plaintiffs' claims will depend on testimony from administrators of California non-profit organizations such as  public schools, and from business owners or managers that have been contacted by Defendants, the interest of justice will be served by a California venue.  These considerations outweigh the Plaintiffs' choice of forum (factor 8) as expressed in the forum selection clauses.

When looking at the relevant factors in totality, the Court finds that the interest of justice favor transfer.  Accordingly, Defendants' cross-motion is granted.

## IV.    CONCLUSION

For the reasons set forth above,

(a)  Plaintiffs' motion for a preliminary injunction is **GRANTED IN PART and DENIED IN PART WITH LEAVE TO RENEW.**   Until this matter is resolved or a court of

competent jurisdiction orders otherwise, Defendants are enjoined from using any documents of any form containing the words "Enjoy the City" or the Enjoy the City logos. The motion for a preliminary injunction is denied in all respects with leave to renew in the transferee District.

(b) Defendants cross-motion to transfer venue is **GRANTED**.  The matter is transferred to the United States District Court for the Eastern District of California.  The Clerk of this Court is to transfer the file of this matter to the Clerk of the United States District Court for the Eastern District of California.

**IT IS SO ORDERED**

DATED:  August 28, 2008

Thomas J. McAvoy
Senior, U.S. District Judge